Filed 12/28/15  Suojanen v. Strong CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WAYNE WILLIAM SUOJANEN,<br><br>     Plaintiff, Cross-defendant and Respondent,<br><br>          v.<br><br>KATHLEEN STRONG,<br><br>     Defendant, Cross-complainant and Appellant. | G049411<br><br>(Super. Ct. No. 30-2010-00427473)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt and Gail Andrea Andler, Judges.  Affirmed.  Request for Judicial Notice Denied.

Strong Law Firm and Kathleen Strong, in pro. per., for Defendant, Cross-complainant and Appellant.

Law Office of Michael G. York and Michael G. York for Plaintiff, Cross-defendant and Respondent.

\*          \*          \*

Kathleen Strong appeals from a judgment which denied her any relief against plaintiff Wayne William Suojanen on her cross-complaint. The main complaint, filed by Suojanen against Strong and others, sought declaratory relief to settle the competing claims of various parties to share in $700,000 in attorney fees awarded as a sanction in an underlying case, *Jneid v. TriPole Corporation* (Dec. 17, 2009, G039500) opn.mod. Jan. 15, 2010 (nonpub. opn.) (the underlying case). Strong's cross-complaint alleged various causes of action designed to (1) enforce her attorney fee lien in the underlying case, (2) enforce an earlier judgment she had obtained against Suojanen Law Office, ALC, a defunct corporation, out of the attorney fee award, and (3) hold Suojanen liable for his alleged wrongful interference with her right to recover fees for the work she performed in the underlying case.

Strong argues the adverse judgment on her cross-complaint must be reversed because (1) the trial court erred in sustaining Suojanen's demurrer to the cause of action titled "enforcement of judgment lien" alleged in her initial cross-complaint; (2) the court failed to hold Suojanen to an alleged judicial admission that he was the successor in interest to Suojanen Law Office, ALC; (3) the evidence at trial was insufficient to establish that Suojanen was not the successor in interest to Suojanen Law Office, ALC; (4) the court erred when it refused to consider her claim that Suojanen breached the covenant of good faith and fair dealing implied in the "Cooperation Agreement" he entered into with Strong in the underlying case; and (5) the court erred when it excluded evidence based on the attorney-client privilege.

Strong also contends the judgment must be reversed because the judge who presided at trial violated her obligation to act impartially when she (1) volunteered to have the case transferred to her, (2) relied upon her prior knowledge of the dispute gleaned from the underlying case, (3) conducted an ex parte settlement conference involving Suojanen, but not Strong, in the middle of trial, (4) filed a piece of

2

correspondence under seal in the court file, and (5) made a point of crediting Suojanen's counsel – rather than the evidence – for the outcome favoring him.

And finally, Strong also argues the trial court erred by (1) denying her motion for new trial, (2) refusing to issue a statement of decision, and (3) ordering funds released to Suojanen despite what she claims was a timely filed notice of a new judgment lien.

We affirm the judgment.

Strong has also requested we take judicial notice of various documents from the superior court file in *Jneid v. Novell, Inc.* (Super. Ct Orange County, 2010, No. 00427473). The request is denied as none of these documents was presented to the court below.

FACTS

Strong's claims against Suojanen arise out of their relationship as cocounsel for plaintiff Amer Jneid in the underlying case. According to Strong's third amended complaint, she entered into an attorney fee contract with Jneid, in August 2004, giving her the right to recover the reasonable value of her services and also giving her the right to a lien against any judgment or award in the case to secure payment of her fees. She also alleged she had entered into a "cooperation agreement" with Suojanen, by which he committed to "protect said attorney fee lien by absorbing for his own account any liens or other amounts that may become due to his former law partner, [c]ross-defendant Wendy Reed, and to indemnify and hold [Strong] harmless from any such claims."

Strong's representation of Jneid was later terminated, and in March 2006, she filed a notice of her attorney fee lien in the underlying case.

In January 2010, this court reversed a judgment entered in favor of Jneid and his coplaintiffs in the underlying case and remanded the case for a retrial. But

3

because a defendant in that case, Novell, Inc., had engaged in discovery abuse, our opinion also instructed the trial court to "determine the attorney fees, costs, and expenses incurred by [Jneid] in connection with the already completed trial" and to "determine the amounts Novell shall pay to [Jneid] for additional discovery to be conducted because of [Novell's] late production of the documents" and to "order Novell to pay those amounts forthwith." (*Jneid v. TriPole Corporation, supra,* (G039500) at pp. 6, 7.) The trial court, per Judge Gail A. Andler, later determined Novell must pay approximately $300,000 in costs and expenses, and $700,000 in attorney fees to Jnied. (*Jneid v. Novell, Inc.* (Sept. 23, 2011, G044491) [nonpub. opn.].)

However, as Strong alleged in her cross-complaint, before the trial court's final determination of the sanction amount, Novell paid $250,000 directly to Suojanen as a "prepayment" of the expected sanctions. No portion of that $250,000 prepayment was shared with Strong.

In November 2010, Suojanen and Jneid, along with two other plaintiffs in the underlying case, filed a complaint for declaratory relief against Strong and others (including Suojanen's former partner, Reed), seeking an adjudication of those defendants' disputed claims to share in the $700,000 attorney fee award. Strong filed a cross-complaint against Suojanen, Novell and others, alleging causes of action for damages arising out of Novell's prepayment of the $250,000 to Suojanen. Strong claimed that payment, which Suojanen had since "dissipated," violated her attorney fee lien in the underlying case, as well as a separate judgment lien she had filed against Suojanen Law Office, ALC.

Although Suojanen answered Strong's cross-complaint, Novell demurred. Novell argued that Strong's third cause of action, styled "enforcement of judgment lien" failed to state a cause of action. Despite his earlier answer, Suojanen filed a notice of joinder in Novell's demurrer. And although Strong objected to Suojanen's notice of joinder in the demurrer, the trial court allowed it and sustained the demurrer as to the

4

third cause of action with 10 days leave to amend. Strong later filed amended cross-complaints, including one stating a cause of action against her former client, Jneid, seeking to obtain the reasonable value of the attorney services she rendered to him in the underlying case. But Strong did not attempt to amend her third cause of action for enforcement of her judgment lien against Suojanen and Novell.

Strong and Novell later "settled their differences" and she also settled her fee claim against Jneid with an agreement she would receive $325,000 for the services she had rendered on his behalf. However, other cross-complaints were filed, including (1) a cross-complaint filed by Suojanen against Strong, seeking a court order expunging a notice of judgment lien she had filed against him as an individual, based on the allegation that the only judgment she had obtained was against Suojanen Law Office, ALC, the defunct law corporation bearing his name, and not against him individually, and (2) a cross-complaint filed by Jneid against Suojanen, alleging legal malpractice and seeking declaratory relief and an accounting of all expenses incurred in the underlying case.

In January 2012, the remaining sanction award (net of the $250,000 Novell had prepaid directly to Suojanen) was ordered deposited with the court, for distribution in accordance with the outcome of the litigation.

And in October 2012, the case was designated complex and transferred to Judge Andler, the judge who had determined the amount of the sanction awarded against Novell in the underlying case.

The various disputes were tried to the court, and the trial was conducted in several phases. The first phase addressed the threshold question of whether the attorney fee award from the underlying case belonged to Suojanen or to Jneid, his client. The court determined the award belonged to Jneid. Next, the court addressed Suojanen's original complaint for declaratory relief, to determine the validity and priority of various liens filed against him in the underlying case. The court then decided Suojanen's cross-complaint seeking expungement of Strong's notice of lien filed against him as an

5

individual.  The court granted that relief on the basis Strong had not obtained any judgment against Suojanen individually.

Next, the court addressed Jneid's cross-complaint for malpractice and declaratory relief against Suojanen.  This phase of the trial spanned eight court days, and by the eighth day, it became apparent that examining every payment at issue in the accounting cause of action would be (as the court characterized it) "a lengthy and expensive process."  The court, along with counsel for Jneid and Suojanen, began exploring the possibility of a stipulation to streamline the process, and perhaps resolve aspects of their accounting dispute.  Because those parties seemed amenable to reaching a stipulation, the court declared a "short break" to allow counsel to discuss a stipulation.

The "short break" turned into a "settlement" conference involving the court, Jneid and Suojanen, which culminated in the settlement of Jneid's cross-complaint against Suojanen.  Strong acknowledges she was present in the courtroom when the other parties and the judge went "back into chambers to discuss things."  She complains she "was not invited to participate in those . . . discussions" but was instead "told to wait in the courtroom and then to leave at the usual time the court closed."  Strong does not claim, however, that she registered an objection to any of that.  At 8 p.m. that same evening, Suojanen and Jneid provided the court with a signed agreement resolving their differences.

The court next addressed Strong's cross-complaint against Suojanen, which had been boiled down to claims that (1) Suojanen's acceptance of the $250,000 "pre-payment" of sanctions from Novell constituted a breach of his cooperation agreement with Strong in the underlying case, and (2) Suojanen was the agent, alter ego, or successor in interest to the defunct law corporation she had obtained her earlier judgment against, and thus was personally liable for that judgment. The court concluded Strong failed to meet her burden of proof on either claim, and ordered judgment entered in Suojanen's favor.

Thirteen days after the court issued its decision against her, Strong filed a request for a statement of decision. Suojanen objected to the request on the basis it was untimely. In response, Strong acknowledged she had calendared the date incorrectly, but asked the court to issue the statement "notwithstanding my calendaring error." The court declined to do so, and rejected the request as untimely. Strong then filed a formal written motion for a statement of decision, again asking the court to excuse her calendaring error. The motion was denied.

Following the court's entry of judgment on her cross-complaint, Strong filed a motion for new trial, asserting, among other things, that the evidence was insufficient to support the judgment, and there were irregularities in the proceedings. The court denied the motion.

Finally, the court ordered distribution of the remaining funds held in its custody, in accordance with its rulings. A portion of the funds were released to the custody of Suojanen's counsel, to be held in trust, and subject to any additional liens.

DISCUSSION

*1. Procedural Flaws in the Order Sustaining Demurrer*

Strong's initial argument is that the court committed procedural error by sustaining Suojanen's demurrer to the "enforcement of judgment" cause of action in her second amended complaint. Specifically, she contends Suojanen's joinder in the demurrer filed by Novell was untimely, and that the court should have disregarded the joinder because Suojanen had already filed an answer before joining in the demurrer.

However, while it may be true that a trial court could properly reject Suojanen's joinder based on either of those procedural concerns, Strong does not contend that either actually deprived the court of jurisdiction to allow it. Consequently, these purported errors would warrant reversal only if prejudicial. (Cal. Const., art. VI, § 13

7

["No judgment shall be set aside, or new trial granted, . . . as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"].) The burden is on Strong to establish she was prejudiced by these alleged errors. She did not.

Even if Suojanen's answer to the cross-complaint operated as a waiver of his right to demur, it is clear he still could have raised the same pleading defects addressed in Novell's demurrer by way of a separate motion for judgment on the pleadings. (*Ion Equipment Corp. v. Nelson* (1980) 110 Cal.App.3d 868, 877.) Such a motion can be made at any time because "[t]he interests of all parties are advanced by avoiding a trial and reversal for defect in pleadings." (*Ibid.*) As Suojanen retained the right to challenge defects in Strong's cross-complaint even after he filed his answer, and she does not contend she would have responded any differently to the merits of that challenge had he raised it in a separately filed motion for judgment on the pleadings, the court's error, if any, in allowing Suojanen to do so by way of a joinder in Novell's demurrer cannot justify a reversal of the judgment.

## 2. *The Merits of the Demurrer*

As Strong acknowledges, the court sustained the demurrer to her third cause of action, but granted her leave to amend. She refers to this as a "limited leave to amend," but the court's order places no limit on the grant. Thus, rather than amend this cause of action with additional allegations, it was Strong's election to stand on it as pleaded. "When a demurrer is sustained with leave to amend, and the plaintiff chooses not to amend but to stand on the complaint, an appeal from the ensuing dismissal order may challenge the validity of the intermediate ruling sustaining the demurrer." (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312.)

8

On appeal, "we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Blank v. Kirwan* (1985) 39 Cal.3d. 311, 318.) Appellant "bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law" and "must show the complaint alleges facts sufficient to establish every element of [the] cause of action." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)

Turning to the merits, Strong first argues that Novell's demurrer asserted only that the third cause of action stated no cause of action against *it*, while saying nothing about the validity of that cause of action against *Suojanen.* Not so. Novell's attack on the validity of Strong's third cause of action was centered on the assertion that the purported judgment lien was of no legal effect in the underlying case because the Suojanen Law Office was alleged to be merely *counsel* to a party in the case, but was not itself *a party*. That assertion was not dependent upon the status of any specific defendant. If Strong's attempt to create a judgment lien in the underlying case was ineffective on the basis that the alleged judgment debtor was not a party to that case, then it was ineffective as to everyone.

Strong also claims the court erred in sustaining the demurrer because it "made improper and extensive use of an 86-page 'judicial notice request' filed by Novell [], to determine the merits based on numerous disputed factual issues." However, that conclusory assertion is unsupported by any specification of even a single "disputed" fact the court might have relied upon in assessing the sufficiency of Strong's third cause of action, let alone any analysis of why it would have been improper for the trial court to rely on that specific fact. The claim is consequently waived.

9

Finally, Strong argues the court erred in sustaining the demurrer because its ruling was predicated on the assertion there was no such thing as a cause of action called "enforcement of judgment," and that "whatever [her] problems are here, they fall under the rubric of enforcement, not liability." However, because we apply a de novo standard in reviewing an order sustaining a demurrer, we need not consider the specific rationale articulated by the court in support of its ruling. Instead, we will affirm an order sustaining a demurrer if correct on any ground relied upon in the demurrer. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111 ["a reviewing court reviews the judgment rather than the reasons for the judgment and must affirm the judgment if any of the grounds stated in the demurrer is well taken"].)

As we have already noted, what Novell argued in support of its demurrer to the third cause of action – styled "enforcement of judgment lien" – was that Strong had not created any enforceable judgment lien in the underlying case because the Suojanen Law Office, the judgment debtor, was not a *party* to that case.

In the trial court, Strong relied on *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1164, which cites *Levy v. Superior Court* (1995) 10 Cal.4th 578, 583, for the proposition that "in the countless procedural statutes in which the term 'party' is used, it is commonly understood to refer to either the actual litigant or the litigant's attorney of record." But the "procedural statutes" referred to in *Levy* itself are provisions in the Code of Civil Procedure which govern matters "that are incidental to the management of a lawsuit, such as making or opposing motions, seeking continuances, or conducting discovery." (*Levy v. Superior Court, supra,* 10 Cal.4th at p. 583.) As examples, *Levy* cites "Code Civ. Proc., §§ 437c ['Any party may move for summary judgment'], 438, subd. (b)(1) ['A party may move for judgment on the pleadings'], 2017, subd. (a) ['any party may obtain discovery']" before noting "[m]otions under these particular statutes are routinely made by attorneys in the course of representing their clients." (*Ibid.*) *Levy* then points out that in other contexts, "the word 'party' is also

10

susceptible of a narrower meaning, namely the specific person or entity by or against whom legal proceedings are brought." (*Ibid.*)

On appeal, Strong does not even acknowledge that challenge to the validity of the purported judgment lien she sought to enforce, let alone address it. Instead, she asserts that while *against Novell*, her third cause of action stated a claim based on the alleged violation of her judgment lien, it actually stated an *entirely different* theory of liability against Suojanen. But that is simply not the case. Strong's third cause of action identifies only one basis of liability, and that is the alleged violation of her claimed judgment lien. Specifically, she alleges that "[c]ross-defendants . . . had both actual and constructive knowledge of said judgment lien," and that "notwithstanding this knowledge . . . Novell paid to Suojanen Law Office the sum of not less than $250,000, as and for sanctions for attorneys fees incurred . . . in the underlying case," and "Suojanen [and] Suojanen Law Office . . . have dissipated the entire amount paid." Strong then cites the existence of California law providing that when a party disregards a judgment lien, and *pays money* subject to that lien to the judgment debtor, that party "is liable for damages incurred thereby" and alleges that she "is entitled therefore to damages in the amount of the lien from these Cross-defendants." That is her alleged theory of liability. But her cause of action includes no allegation Suojanen *paid* any money in violation of Strong's lien. He is alleged to be the recipient of the payment.

Further, the fact Strong also alleges that Suojanen, the individual, and Suojanen Law Office are alter egos; that Suojanen is the successor in interest to Suojanen Law Office; and that Suojanen is the agent of the law office, does not transform this violation of judgment lien theory of liability into a different substantive theory of liability alleged against Suojanen. Those allegations, if proved, might *extend* the liability alleged to exist in the third cause of action from Suojanen Law Office to Suojanen, the individual, but it does not create any *new* theory of liability. (See *Hennesseys' Tavern, Inc. v. American Air Filter Co*. (1988) 204 Cal.App.3d 1351, 1359 ["A claim against a

11

defendant, based on the alter ego theory, is not itself a claim for substantive relief . . . , but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation"].)

In any event, the theory of liability Strong claims to have stated against Suojanen in her third cause of action is an equitable claim known as a "creditor's bill," which she describes as "[a]n equitable suit in which a judgment creditor seeks to reach property that cannot be reached by the process available to enforce a judgment," and as embodying "[t]he [common law] right of a judgment creditor to proceed by action against those who rescue the person of his debtor." She asserts, without citation to authority, that the elements of this equitable cause of action are: (1) "[the existence of] one's judgment"; (2) "a source of funds that should be applied to satisfy that judgment"; and (3) "why those funds should be used that way." But even assuming, for the sake of argument, that these vaguely stated elements establish a cause of action, the allegations contained in the third cause of action of Strong's cross-complaint were insufficient to state it.

First, Strong identified no "source of funds" as being available for satisfaction of her judgment. The only funds mentioned in her third cause of action is an amount identified as "not less than $250,000" which she alleged had been previously paid to Suojanen Law Office by Novell, and then fully dissipated." Second, to the extent this claim rests on the allegation that Suojanen is the alter ego of Suojanen Law Office (the alleged judgment debtor), it does not state a claim against a legally separate person. To the extent this claim rests on the allegation that Suojanen is the "successor in interest" to his former law firm, it does not allege any facts demonstrating why any funds in his possession should be used to pay the law firm's judgment. The bare status of "successor in interest" does not demonstrate any wrongful or inequitable conduct upon which liability could be based. And to the extent this claim rests on the allegation Suojanen is the agent of his former law firm, it provides no basis for imposing liability on him at all.

12

While principals may be liable for actions taken by their actual or apparent agents, agents are not held liable for actions of their principal. And third, contrary to Strong's identification of this cause of action as an "equitable" one, her third cause of action expressly states a claim for monetary damages, not equitable relief.

Significantly, assuming Strong could actually state a claim for equitable relief, the court expressly preserved her right to do so in its demurrer ruling. Where Strong purported to state a claim for equitable relief was in what she characterized as her fifth cause of action, and while the court sustained demurrers to that cause of action without leave to amend, it did so "without prejudice to [Strong] seeking appropriate equitable relief in connection with [Suojanen's] case in chief."

Finally, we reject Strong's assertion the court's demurrer ruling prejudiced her during trial because the court later ruled she had "not adequately plead[ed] a cause of action sufficient to reach the issue of whether Suojanen was responsible for [the] prior judgment." As we have already explained, Strong has failed to demonstrate the court erred by sustaining the demurrer to her cause of action titled "enforcement of judgment lien" as pleaded, and she made no effort to amend. Moreover, if it was Strong's intention to plead a cause of action for a "creditor's bill" against Suojanen on the basis he was the successor in interest to his prior law firm for purposes of liability for her judgment, the allegations of her third cause of action were insufficient to state that claim. Thus, the court did not err by refusing to consider that cause of action as a basis for imposing liability on Suojanen individually for the judgment lien filed against his former law corporation.

3. *Judicial Admission/Judicial Estoppel*

Strong also contends the court erred when it "failed to accept" Suojanen's judicial admission that he was the "successor in interest" to his former law corporation.

13

Similarly, she argues that having made that admission, Suojanen was judicially estopped from denying his status as successor in interest.

But the allegation she relies upon, found in his April 2013 cross-complaint, merely states that Suojanen "individually, as successor to Suojanen Law Office ALC or in partnership with Wendy Reed, was Jneid's attorney in a number of actions from about June 2002 through about July 2012." But this alleges only that Suojanen may have succeeded to the law firm's representation of Jneid (or alternatively may have represented Jneid through a partnership with Reed), not that he succeeded to any of the law firm's *liabilities.*

The phrase "successor in interest" has no fixed legal scope. To be meaningful, it must include a specification of *what* interest a person or entity has succeeded to. Thus, Suojanen's allegation that he is the successor to the Suojanen Law Firm, without more, does not constitute a judicial admission that he is legally responsible for its debts.

## 4. The Substantial Evidence Challenge

Strong also claims the judgment entered in favor of Suojanen on her cross-complaint must be reversed because it is not supported by substantial evidence. In a nutshell, she argues the evidence presented at trial demonstrated that Suojanen was awarded compensation for legal services performed on behalf of his defunct corporation, the Suojanen Law Office, which is her judgment debtor. As such, she was entitled to claim that compensation as part of the effort to satisfy that judgment.

Strong relies on *Quigley v. McClellan* (2013) 214 Cal.App.4th 1276, 1282-1283, for the proposition that the substantial evidence standard requires us to "determine whether there exists substantial evidence, which is evidence of ponderable legal significance that is reasonable, credible and of solid value, supporting the challenged

14

findings of the trier of fact. . . . It must actually be substantial proof of the essentials the law requires in the particular case."

However, as Suojanen points out, it was Strong who had the burden of proof on her cross-complaint, and thus the trial court's finding against her amounted to a determination she did not prove her claim by a preponderance of the evidence. In order to reverse, we would have to conclude the evidence presented was so compelling that no reasonable trial judge could have found it lacking. (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465.) The test is "'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such character and weight as to leave no room for judicial determination that it was insufficient to support a finding."'" (*Id.* at p. 466.) It was not.

Strong is correct that if Suojanen were seeking payment for work done for the clients by his defunct law corporation, such payment would be treated as an asset of the defunct corporation and be subject to its liabilities. But Strong has made no showing that any of the funds in dispute – an award of sanctions which was specifically limited to compensating work done in the underlying case between June 2006 to April 2008 (*Jneid v. Tripole, supra,* G044491) – would have been earned by the defunct corporation. Instead, she merely cites the settlement agreement entered into between Jneid and Suojanen, in which Jneid authorizes payment to Suojanen in the amount of $400,000, "in full satisfaction of all claims." She characterizes this as evidence Suojanen recovered "payment for work including that time period [presumably referring to the period in which the defunct corporation was active] in the amount of $400,000."

But on its face, this settlement agreement does not establish that any of the claims referred to were for work done by the defunct corporation, as opposed to Suojanen individually, nor does it include the corporation as a party. It purports to be an agreement solely between Jneid and Suojanen as individuals.

15

Further, according to the evidence offered by Suojanen, he practiced law through the defunct corporation only in 2002 – four years before the time period compensated by the Novell sanction award – and began practicing in partnership with Reed in 2003.  In 2004, that partnership terminated and he began practicing law under the name "Suojanen Law Office" as a sole proprietorship.  Strong did not obtain her judgment against the defunct corporation until August 2007.

Given this evidence, we certainly could not say the uncontradicted and unimpeached evidence left no room for the trial court to determine Strong failed to prove her claim that Suojanen was liable – as a successor in interest, or otherwise – for the judgment she obtained against his former law corporation.

Finally, the fact the trial court stated it did not find aspects of Suojanen's testimony to be credible did not, in and of itself, establish the truth of facts he denied. Strong relies on Evidence Code section 411, which states "the direct evidence of one witness *who is entitled to full credit* is sufficient for proof of any fact," (italics added) and suggests that since the trial court concluded Suojanen's testimony was not entirely credible, it could not have relied on anything he said as sufficient evidence to support a judgment in his favor.  But again, this argument misapplies the burden of proof.  It was Strong's burden as cross-complainant to prove her facts, not Suojanen's as cross-defendant to prove his.  The trial court would have been free to reject everything Suojanen testified to, and still conclude that Strong had not carried her burden of proof.

5. *Violation of Due Process/Judicial Bias*

Strong next claims the trial court deprived her of due process and exhibited judicial bias because Judge Andler, the judge who ultimately tried the case:  (1) improperly *volunteered* to take over the case on the basis she had presided over the award of sanctions in the underlying case – thus depriving the parties in this case of a nonbiased, *randomly assigned* trial judge; (2) prejudged the issues in the case, based on

16

her experience in the underlying case; (3) conducted an ex parte settlement conference with Strong's "adversaries," in which the merits of the litigation were discussed "privately," and "candidly," while excluding Strong; (4) permitted a sealed document to exist in the court file; and (5) decided the merits of Strong's cross-complaint on the basis of the arguments made by Suojanen's counsel, rather than the evidence.

Strong acknowledges these assertions involve a "sensitive issue," but that acknowledgment is by no means a proper substitute for the required research and careful analysis that should occur before a litigant makes such assertions.

*5.1  Judge's alleged impropriety in volunteering for the case and relying on experience in underlying case*

Strong's first two complaints are interrelated, and both are frivolous.  She claims due process guarantees "an impartial tribunal . . . through random assignment of a judicial officer," and she asserts Judge Andler violated that guarantee when she "chose herself" to preside in this case.  Strong then claims it was inappropriate for Judge Andler to allow anything she had learned while presiding over the underlying case to seep into her assessment of the disputed issues in this one.

However, in making these arguments, Strong inexplicably ignores California's express policy favoring the assignment of related cases to a single judge, where it would conserve judicial resources to do so.  (See Cal. Rules of Court, rule 3.300.)  This policy makes clear that a pending case can be related to an already completed case, and in those circumstances it is appropriate for the court to assign the pending case to the judge who presided over the earlier one.  (*Ibid.*)  And of course, that policy does not deprive a litigant in the second case of a "randomly" assigned judge because the judge who presided over the first case was randomly assigned to *that* case.

This is exactly what occurred here.  When this case was designated complex, it had to be assigned to a judge designated to handle complex matters.  Judge

17

Andler, who was among that group, volunteered to take it on *because she had presided over the sanction award in the underlying case*. She was, consequently, in a unique position to understand the circumstances surrounding that award, and to apply her understanding in resolving the many disputes that arose in this case about how that award should be distributed. This is exactly what a judge is supposed to do, and there is absolutely no basis for Strong to question Judge Andler's impartiality on this.

In fact, this case presents an excellent example of why the practice of assigning judges to cases they have already developed a familiarity with makes sense. One of the most heated issues in this case – and which Strong continues to complain about here – is the Novell "prepayment" of $250,000 to Suojanen, made while the final sanction amount was still being litigated in the underlying case. Suojanen's acceptance of that payment was viewed by some, including Strong, as evidence he was deliberately evading the attorney fee liens of Reed and Strong. However, Judge Andler had a slightly different take because she recalled it had been *her idea* for Novell to pay a portion of the sanction upfront, specifically because Suojanen and his clients needed a "war chest" *to fund their retrial* against Novell. That, after all, had been the point of the original sanction order: to require Novell, rather than the plaintiffs, to absorb the cost of the first trial, so that plaintiffs could afford to participate in a second one. As Judge Andler expressed it, "the court's intention in persuading them to do that was so that the clients – Mr. Jneid, TriPole – so that they could have the money that was due to them, because through no fault of their own they were going to have to go ahead and go through this retrial."

If that prepayment had been divided up among the attorneys who had worked on the case previously, instead of being used to fund the new trial on behalf of the clients, it would have undermined the payment's very purpose. And having been involved in the original decision, Judge Andler knew that. Thus, she was uniquely

18

qualified to assess whether Suojanen had violated any duty owed to Strong by using the Novell prepayment to fund the continuance of the underlying litigation, rather than dividing it with her, as compensation for her prior work on the case.

Unfortunately, Strong twists what Judge Andler said, arguing that the fact "she had wanted certain parties to have a 'war chest,' which she says she had personally persuaded Novell to fund," caused her to view "her proper role as protecting that fund, which seems to have motivated her to 'volunteer' to take [this] case." Apparently, Strong's theory is that Judge Andler rejected her claims against Suojanen out of some misguided personal stake in protecting the "war chest" she had created. But of course, that makes no sense. As Strong herself alleged, that $250,000 war chest had been "dissipated" before Strong even filed her cross-complaint. There was nothing for the judge to "protect." Instead, the court's role was to assess the merits of Strong's contention that Suojanen's dissipation of the prepayment money on expense of further litigating the underlying case, rather than paying some or all of it to her, was wrongful. We find no error in her assessment of that issue.

And of course, there is no basis for Strong's assertion that Judge Andler "chose herself" for this case. The order transferring the case to Judge Andler was issued by the Presiding Judge of the court, as is typical. That Judge Andler's willingness to take on this case – and her experience in the underlying case – played a part in the Presiding Judge's decision to assign it to her, does not imply any nefarious goings-on.

Finally, Strong's assertion that Judge Andler "overrule[d]" the Presiding Judge's grant of a peremptory challenge filed against her is a gross distortion of the record. What actually happened is that when the matter was first assigned to Judge Andler, defendant and cross-complainant Reed filed a peremptory challenge. The Presiding Judge responded immediately by issuing a same-day order transferring the case to another judge. The next day, Jneid filed an objection to the peremptory challenge and requested it be stricken. The Presiding Judge then *assigned the case to Judge Andler to*

19

*rule on the validity of the peremptory challenge*. She ruled it was facially invalid and ordered it stricken. There was no impropriety.

### 5.2 Ex parte settlement conference

Strong next asserts the court violated her due process rights when it engaged in an ex parte settlement conference with Jneid and Suojanen, whom Strong characterizes as her "adversaries," during which the merits of the litigation were discussed "privately," and "candidly," while excluding her from that conference. She argues the court could not have adjudicated her cross-complaint in an unbiased fashion after engaging in this private ex parte meeting with her adversaries. The issue is waived.

Strong does not claim that while the case was pending in the trial court, she was unaware of the facts she now cites as support of her claim of judicial bias. To the contrary, she admits she was sitting in court on the day the judge encouraged Jneid and Suojanen to work out a stipulation regarding the evidence necessary to adjudicate the accounting dispute between them and when that same discussion morphed into a full-blown private settlement discussion with the judge. By her own description she was "told to wait in the courtroom and then to leave at the usual time the court closed" if the conference was not concluded. Moreover, the court issued a minute order the next day, reflecting Jneid and Suojanen had reached a settlement that night.

But Strong did not immediately register an objection to the settlement conference, nor did she claim before commencement of the trial on her cross-complaint that the judge should recuse herself based on her participaton in that conference. It is well-settled that a party cannot gamble on a favorable ruling in the trial court by silently proceeding with the case before the judge whom she has reason to believe is biased, only to seek reversal of the unfavorable judgment by complaining of judicial bias for the first time on appeal.

20

"Bias and prejudice are grounds for disqualification of trial judges. [Citation.] And if judges fail to recuse themselves, there is a statutory procedure to litigate the issue." (*Moulton Niguel Water Dist. v. Columbo* (2003) 111 Cal.App.4th 1210, 1218.) "If a judge refuses or fails to disqualify herself, a party may seek the judge's disqualification. The party must do so, however, 'at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification.'" (*People v. Scott* (1997) 15 Cal.4th 1188, 1207,) "It is too late to raise the issue for the first time on appeal." (*Id.* at p. 1207; *Moulton Niguel Water Dist. v. Columbo, supra*, 111 Cal.App.4th at p. 1218. ["[Appellants] did not preserve their claim of judicial bias for review because they did not object to the alleged improprieties and never asked the judge to correct remarks made or recuse himself"].)

Thus, in *People v. Seaton* (2001) 26 Cal.4th 598, 698, the Supreme Court concluded the defendant waived any claim of judicial bias based on the trial judge's "off-the-record discussions with law enforcement personnel about whether defendant should be shackled, his trip to the county clerk's office to locate records of one of defendant's prior convictions and his ex parte request to the prosecutor for a draft of a judgment imposing the death sentence." As the Supreme Court explained, "[d]efendant has not preserved this claim for review because he failed to object to the allegedly improper acts and never asked the judge to recuse himself." (*Ibid.*) The same rule applies here.

Strong relies on *Bonner v. City of Santa Ana* (1996) 45 Cal.App.4th 1465,1476, disapproved on other grounds in *Katzberg v. Regents of the University of California* (2002) 29 Cal.4th 300, 320-321, for the proposition that "[d]ue process concerns may be raised for the first time on appeal." But that case states no special rule about due process concerns – let alone specific claims of judicial bias. Instead, it merely relies on the well-established proposition that appellate courts have discretion to consider an issue first raised on appeal when the issue "is one of pure law" presented in the same factual context as existed in the trial court. (*Id.* at p. 1477.) That is not this case. We can

only speculate what might have occurred, and what factual record would have been developed, if Strong had made her concerns known in the trial court.  That is why her failure to do so results in a waiver of the complaint.

### 5.3  Existence of a sealed document in the file

Strong also complains that a "further indicia of an unfair process is the presence of a sealed document in the trial court's file that [she] has never been permitted to see."  Specifically, Strong claims she discovered after trial was completed that a sealed document, identified as "correspondence," had been filed with the court under seal on August 13, 2013 – which she characterizes as "during her trial."  However, the document was not filed during the period in which her cross-complaint was tried, as that phase of the trial commenced on August 26.

Strong claims that upon her discovery of the sealed document, she attempted to buy a copy of it from the court's public document system, but was refused on the basis the document was sealed, and she later repeated her request to Judge Andler's courtroom clerk, who also refused.  At no point does Strong claim she attempted to bring the matter to *the judge's* attention, nor does she claim she filed any request with the court for relief that might have ameliorated what she now contends is an "inherently prejudicial" circumstance.  She has consequently waived the issue.

### 5.4  Basing decision on counsel's argument, rather than the evidence

Strong also complains the court exhibited bias and denied her due process because it explicitly stated, following the conclusion of the trial on her cross-complaint, that Suojanen probably would not have prevailed if it were not for the "fine lawyering" provided by his counsel.  Strong interprets this as a concession by the court that it based its decision on the arguments of counsel, *instead of* the evidence.  The court certainly

22

said no such thing, and there is no basis to infer it.  The court was simply complimenting Suojanen's counsel.  It happens.

*6. Rejection of Strong's Claim for Violation of the Covenant of Good Faith and Fair Dealing*

Strong also claims the trial court erred by refusing to consider her claim for breach of the covenant of good faith and fair dealing against Suojanen, as an aspect of her cause of action alleging he breached the "Cooperation Agreement" they entered into when she agreed to work with him on the underlying case.  We reject the claim.

Strong correctly points out that a claim alleging a violation of the implied covenant of good faith and fair dealing implied in a contract constitutes a claim for breach of contract, and she is also correct that a party need not "specifically allege the words 'good faith and fair dealing' in a cause of action for breach of contract" to claim liability based on a breach of that covenant.  But Strong's third amended cross-complaint did not allege Suojanen did anything that would violate the covenant of good faith and fair dealing implied in the "Cooperation Agreement" she entered into with him.

Strong alleged that her right to recover fees in the underlying case – and the source of her attorney fee lien – was her contingent fee agreement with her client, Jneid.  The "Cooperation Agreement" she entered into with Suojanen did not create any lien claim.

Instead, the "Cooperation Agreement" with Suojanen was a more limited agreement, allegedly embodying his promise to "protect [her] attorney fee lien by absorbing for his own account any liens or other amounts *that may become due to his former law partner . . . Wendy Reed*."  (Italics added.)  Strong alleged Suojanen breached that agreement by negotiating and receiving the advance payment of "not less than

23

$250,000 from Novell, Inc. as a 'prepayment' of an expected sanctions award in the Underlying Case."

Her argument is that while Suojanen's acceptance of that prepayment amount from Novell (what Strong characterizes as "absconding with the funds . . . that should have been used to compensate [her] through her lien"), did not actually violate the terms of the Cooperation Agreement, it did violate the agreement's covenant of good faith and fair dealing because it "frustrate[d] [her] rights to the benefits of the contract." But the argument confuses the benefits Strong was entitled to under the Cooperation Agreement with the benefits she was entitled to under her contingent fee agreement with Jneid – i.e., payment for her services.

The benefit Strong was entitled to under the Cooperation Agreement was Suojanen's promise that her share of the funds generated in the underlying case would not be depleted through the payment of any claim *asserted by Reed*.  Strong's right to that benefit could not have been frustrated in the absence of some payment to Reed, or some other circumstance by which Reed's claim for payment impaired her own claim.  None was alleged, and consequently, Strong did not allege facts sufficient to state a claim for relief based on Suojanen's violation of the covenant of good faith and fair dealing implied in the Cooperation Agreement.

*7. Alleged Error in Excluding Evidence Under Attorney-Client Privilege*

Strong next asserts the trial court committed prejudicial error by sustaining Suojanen's objection, based on the attorney-client privilege, to her introduction of Jneid's deposition testimony, along with certain exhibits Jneid had produced, as part of her case against Suojanen.  She points out the privilege belongs to Jneid, the client, rather than Suojanen, and Jneid waived that privilege when he testified at the deposition.

But even if that were true, Strong has failed to demonstrate prejudice.

24

"No judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, . . . and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed. There shall be no presumption that error is prejudicial, or that injury was done if error is shown." (Code of Civ. Proc., § 475.)

Strong's argument offers only the most cursory and conclusory description of the evidence she was prevented from introducing. She first characterizes it as "show[ing] how Suojanen and Jneid – back when they were not adversaries – had worked together to harm Strong's interests." She also asserts that "the testimony, if allowed, would have shown the facts and timing as to how Suojanen and Jneid had schemed to deprive Strong of the benefits of her 'Cooperation Agreement' with Suojanen, and further, how Suojanen had interfered in Strong's contingency fee agreement with Jneid – Strong's first two causes of action in her cross-complaint. That was prejudicial error." And that is Strong's entire description of the excluded evidence, and her entire analysis of how that evidence would have impacted the case. It is wholly insufficient to sustain her burden of establishing that "a different result would have been probable" in the absence of the court's ruling.

### 8. Denial of Motion for New Trial

Strong also asserts the court erred by denying her motion for new trial, reiterating her claim that the court's statement about the reasons for Novell's prepayment of $250,000 to Suojanen in the underlying case – specifically the "war chest" comment – demonstrated the improper basis upon which the court made its "rulings against Strong all the way through" this case. But we have already explained it was not improper for the court to rely on its own participation in the underlying case to inform its understanding of

25

the events that shaped the claims asserted in this one.  Having found no error in what the court did, we also cannot fault it for denying Strong's motion for new trial.

## 9. *Denial of Request for Statement of Decision*

Strong claims the court erred by denying her request for a statement of decision.  Strong acknowledges her written request for a statement of decision was untimely, but she contends she also made that request orally when the court announced its ruling, and she claims it was reversible error for the court to ignore that oral request.  The record belies her claim.

Strong's assertion that she made an oral request for a statement of decision does not specify the words she used to the trial court, and for good reason:  what she said was "[m]ay I ask about the successor in interest claim?"  On its face, this query suggests she wanted to engage in an immediate colloquy with the court, not that she was asking the court to issue a formal statement of decision.  More significantly, that interpretation was confirmed by Strong herself, who later declared to the court that she had *not yet decided* whether to ask for a statement of decision at the time the court announced its decision:  "[a]t the conclusion of our trial, I calculated that if I needed a statement of decision, that it would be due on September 14, 2013 and calendared that date.  I wanted to see the proposed judgment *before I made any decision as to whether I should request a formal statement of decision by the court*."  (Italics added.)  Having made that statement under penalty of perjury, Strong cannot now argue the opposite is true.  We consequently reject Strong's assertion she made an oral request for a statement of decision.

Strong's related contention, that the court abused its discretion by failing to excuse her belated filing of the written request for a statement of decision, fails as well.  Strong's argument is that because she missed the deadline by only one court day, as a result of a calendaring error, the court had no discretion to refuse.  But the court is required to issue a statement of decision only if requested in a timely manner.  (Code Civ.

26

Proc., § 632.) It is not required to issue one otherwise. If we were to declare it an abuse of discretion for the court to reject a request filed one day late, the effect of that ruling would be to require the court to issue a statement of decision to any litigant who requested it only one day late. That would amount to an alteration of the statutory deadline by one day. Even if we wished to do that, we could not.

*10. The Order Releasing Funds*

Strong's final argument is that the court erred by ordering the release of funds held in its custody and in the custody of Suojanen's prior counsel. The court's order, announced in a minute order on November 1, 2013, and issued formally on November 19, 2013, specified that the remaining funds held by the court ($109,365.19) and the funds held by the attorney ($6,500) would be transferred to the client trust account of Suojanen's current attorney, Michael York. York was ordered to pay $81,490.23 to USA Specialized Services, Inc., out of the funds previously held by the court, and to pay $1,500 to American Geotechnical upon receipt of the funds previously held by Suojanen's prior counsel. York was ordered to hold "[t]he balance of funds after [those] payments . . . in a fiduciary capacity and subject to any liens."

Strong claims this order was improper because she filed a new notice of lien, the day before the court issued its minute order, informing the court she was the assignee of a different judgment obtained against Suojanen by Lexis-Nexis. Strong's complaint is based on the notion the court's distribution order gave funds "to Suojanen," and argues the court was required to ensure her new lien was "paid before Suojanen could obtain any funds from the court's account." But that is not what the court's order provided. It authorized no distribution of funds to Suojanen. Instead, the court's order simply transferred custody of the funds from itself to York, who was ordered to hold the balance remaining after specified payments were made (which payments Strong does not challenge) as a fiduciary "and *subject to any liens*." Strong herself acknowledges those

27

remaining funds are still in York's possession, as he has retained them "pending this appeal."

Assuming Strong's new lien is valid, and was timely and properly asserted as she claims (issues we need not address here), then her remedy is to seek satisfaction from the funds held by York. She was not aggrieved by an order which merely shifted *custody* of those funds from the court to a fiduciary, while ensuring they would remain subject to any liens against Suojanen.

## DISPOSITION

The judgment is affirmed. Strong's request for judicial notice is denied. Suojanen is to recover his costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

ARONSON, J.

28