[No. G030298. Fourth Dist., Div. Three. Sept. 10, 2003.]

MOULTON NIGUEL WATER DISTRICT, Plaintiff and Respondent, v. RALPH COLOMBO et al., Defendants and Appellants.

## Counsel

Law Office of Wm. Scott Ayers and Wm. Scott Ayers for Defendants and Appellants.

Bowie, Arneson, Wiles & Giannone, Patricia B. Giannone and Dawn M. Messer for Plaintiff and Respondent.

## Opinion

**RYLAARSDAM, Acting P. J.**—This dispute arises in an action brought by plaintiff Moulton Niguel Water District (district) to condemn a nonexclusive pipeline easement under land owned by defendants Ralph and Ida Colombo (owners). The jury awarded damages substantially in excess of district's pretrial offer. Owners moved to recover their litigation expenses under Code of Civil Procedure section 1250.410, subdivision (b) (all further statutory references are to this code), on the ground district's pretrial offer was unreasonable. The court denied the motion; owners contend this constitutes error. They further maintain the denial of their motion was motivated by judicial bias. The record supports neither of these claims. ██ The law requires the trial court to evaluate the evidence independently to determine the reasonableness of the pretrial offer. It did so. And substantial evidence supports its denial of the motion. Therefore, we affirm the order.

## FACTS

District filed this condemnation action to acquire a "nonexclusive easement ... for underground water, reclaimed water and sewer pipelines and appurtenant facilities for transmission purposes ...." Owners' answer, in part, contested district's right to take. After trial, the court held that district had the right to take the easement (a determination not contested here). The jury awarded owners $5,400 for the easement and $43,000 for severance damages, and the court added $9,582 in prejudgment interest, for a total amount of $57,982.

Shortly before the trial, as required by section 1250.410, subdivision (a), district filed and served its "final offer" of $10,000; owners' "final demand"

was $66,330. Based on the substantial difference between district's pretrial offer and the jury verdict, owners sought "$9,937.38 for statutory costs and litigation expenses, and $44,633.93 in attorney, appraisal, and expert witness fees, for a total of $54,571.31." District opposed the motion, contending among other things, that the evidence showed it made a reasonable offer and the larger verdict resulted from emotional factors owners improperly introduced into the trial. District asserted the court should itself evaluate the evidence to determine whether the pretrial offer and demand were reasonable. After argument, the court denied owners' motion but stated it would allow normal litigation costs if owners filed a cost bill. The record furnished to us does not include such a cost bill.

## DISCUSSION

*The Trial Court Must Independently Review the Reasonableness of Pretrial Offers*

██ Section 1250.410, subdivision (b) requires the court to determine whether the condemnor's pretrial offer was reasonable; if not, and if the condemnees made a reasonable demand, they are entitled to their litigation expenses. The issue here is obvious: was the jury's determination of damages binding on the judge in deciding whether district's pretrial offer was reasonable, or does section 1250.410 require the court to evaluate the evidence independently? If the latter, was the court's determination here supported by substantial evidence?

The parties called our attention to only one California Supreme Court decision specifically dealing with the scope of the court's power to determine the reasonableness of pretrial offers, *Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694 [66 Cal.Rptr.2d 630, 941 P.2d 809] (*MTA*). But to fully understand *MTA*, we must first review an earlier Supreme Court decision, *Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790 [214 Cal.Rptr. 904, 700 P.2d 794] (*Gilmore*).

*Gilmore* compared the language of an earlier statute (former § 1249.3) and cases decided thereunder, with the language of present section 1250.410, adopted effective 1976. The earlier statute provided, " 'If the court … finds that the offer of the condemnor was unreasonable and that the demand of the condemnee was reasonable, *all viewed in the light of the determination as to the value of the subject property*, the costs allowed … shall include [litigation expenses].' [Citation.]" (*Gilmore, supra*, 38 Cal.3d at p. 808.) Cases applying the pre-1976 statute had held it was error not to award litigation expenses whenever the amount of the judgment was significantly higher than the

condemnor's offer. But, as *Gilmore* notes, the amended language of 1250.410 imposes a different standard.

■ Section 1250.410, subdivision (b), the post-1976 statute, instructs the court to judge the reasonableness of the offers *"viewed in the light of the evidence admitted and the compensation awarded in the proceeding...."* (Italics added.) *Gilmore* noted the inapplicability of earlier cases such as *County of Los Angeles v. Kranz* (1977) 65 Cal.App.3d 656 [135 Cal.Rptr. 473] (relied on by owners here), which bound the court to the size of the award in determining the reasonableness of the offer. (*Gilmore, supra*, 38 Cal.3d at p. 808.) The opinion concluded that "the mathematical relation between the plaintiff's highest offer and the award is but one factor to be considered by the trial court under the new statute" (*id.* at p. 808) and affirmed the trial court's denial of litigation costs even though the award was substantially greater than the offer. (*Id.* at p. 795.)

In *MTA*, a transit authority sought to condemn a strip of land to construct a light rail line. The authority's final offer was $200,000; the owner's final demand was $500,000; the jury awarded in excess of $1 million. The trial court denied the owner's motion for litigation expenses, and the Court of Appeal reversed, holding the denial was an abuse of discretion because the authority's offer had been less than 18 percent of the award. (*MTA, supra*, 16 Cal.4th at pp. 719, 722.) The Supreme Court concluded the appellate court erred. (*Id.* at p. 719.)

Relying on *Gilmore*, *MTA* reiterated "the mathematical relation between the condemner's highest offer and the award is only one factor that should enter into the trial court's determination. [Citations.]" (*MTA, supra*, 16 Cal.4th at p. 720.) In so holding the court disapproved several Court of Appeal opinions issued after *Gilmore* that "strayed from the principle that the mathematical disparity between the offer and the award is but one factor for the trial court to consider." (*Id.* at p. 720.) These disapproved cases had held that the condemnor's offer was unreasonable as a matter of law "based purely on mathematical disparity" between the offer and the award. (*Ibid.*)

*MTA* extensively quoted from the trial court to demonstrate it had conducted its own evaluation of the evidence, and it supported the denial of litigation expenses. ■ *MTA* and *Gilmore* hold that the phrase "viewed in the light of the evidence admitted" in section 1250.410, subdivision (b) requires trial judges to evaluate that evidence independently rather than merely compare the jury's condemnation award with the pretrial offers. Thus, we must decide whether there is substantial evidence to support the trial court's conclusion that district's pretrial offer was reasonable. Before we proceed with this determination, a few comments about owners' attempts to distinguish *MTA*.

Owners first claim that contrary to the agency in *MTA,* here "the district 'does not fare well on the good faith, care and accuracy front.' " (Capitalization and italics omitted.) But to assert that the court erred in concluding that district acted in good faith and evaluated the case accurately is merely another way to argue that substantial evidence does not support the decision of the trial court, an issue we discuss below.

Owners next state, without discussion or explanation, that the *MTA* case "was less than 'on point.' " They support this pronouncement solely by quoting the trial court as having stated "that [*MTA*] 'is not on all fours with this one.' " On this score we can only acknowledge that few cases are "on all fours" with prior ones. But that does not necessarily diminish the earlier cases' precedential value. If owners wanted us to ignore *MTA,* they needed to persuade us that, to the extent there are factual distinctions between the two cases, they compel a different conclusion as to the scope of the trial judge's duty to review the evidence to determine the reasonableness of the offers. ▮ Contentions are waived when a party fails to support them with reasoned argument and citations to authority. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273]; *Bernard v. Hartford Fire Ins. Co.* (1991) 226 Cal.App.3d 1203, 1205 [277 Cal.Rptr. 401].)

Next, owners note "[t]he core issue in [*MTA*] arose from a disagreement over whether the damages to the land owner should be offset by any increase in value to the remainder 'by reason of the public improvement for which the property is taken.' " True. But so what? Although this was a major issue in *MTA,* our Supreme Court nevertheless proceeded to address the argument that "the Court of Appeal erred in reversing the trial court's denial of [defendant's] posttrial motion for litigation expenses." (*MTA, supra,* 16 Cal.4th at p. 719.) We can hardly assume it did so to fill some available time rather than to provide guidance to the lower courts.

Owners also point out there were dissents in *MTA.* Again, true. And again, so what? The dissents dispute the majority's holding relating to a setoff rule for partial takings. (*MTA, supra,* 16 Cal.4th. at pp. 722–738.) Neither takes issue with the majority's decision on the question now before us. And whether there are dissents or not, we are required to follow the precedents set by the decisions of our Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) We can hardly adopt owners' cavalier statement that "[t]he arguments and issues in the [*MTA*] case, while interesting, are unrelated to the … case presently under review." Not only are the issues in *MTA* interesting, the resolution of those issues requires a trial court to review the evidence independently to ascertain whether a pretrial offer was reasonable and requires us to evaluate such a determination under the substantial evidence standard.

Owners draw comfort from this court's decision in *People ex rel. Dept. of Transportation v. Woodson* (2001) 93 Cal.App.4th 954 [113 Cal.Rptr.2d 559] (*Woodson*). But that case must be distinguished. There we reversed a denial of litigation costs where the condemning agency's final offer was $1.4 million, while the verdict was in excess of $1.8 million. We did not base our reversal solely on the ratio between the offer and the verdict, a procedure expressly prohibited by *MTA, supra,* 16 Cal.4th at p. 720 and *Gilmore, supra,* 38 Cal.3d at p. 808. As instructed by *MTA,* we considered the ratio between offer and verdict as but one factor. (*Woodson, supra,* 93 Cal.App.4th at pp. 958–959.)

In *Woodson,* there was no indication the trial court had conducted a substantial evidence analysis with respect to the third factor that *MTA* requires the court to consider independently: the " ' "good faith, care and accuracy in how the amount of offer and the amount of demand, respectively, were determined." ' [Citation.]" (*MTA, supra,* 16 Cal.4th at p. 720.) And we determined that an analysis of this factor demanded litigation costs be awarded; specifically we noted that the agency's offer was based upon a use for the property that was not even permitted under the zoning ordinance. (*Woodson, supra,* 93 Cal.App.4th at p. 959.) Here, on the other hand, as we will discuss in more detail below, the trial court did evaluate the appropriate factors, and substantial evidence supports its conclusion

### The Trial Court Independently Evaluated the Reasonableness of the Offer

In denying the motion for litigation costs, the trial court, well aware of the *MTA* case, stated that it was required, "in effect, [to] make a finding that ... the offer made by the condemning agency was unreasonable in light of all of the circumstances ...." The court recognized that it could not solely rely on the relationship of the offer to the ultimate award. It went on, "this is something of an unusual situation where we're not just talking about competing valuation testimony with respect to the effect on the fair market value of the remainder with respect to the taking of a part of a property. But we were looking at a real possibility that the award by the jury could be zero, or close to it, in terms of what additional impact on the fair market value of the property the improvement project of the pump station there affected."

Significantly, the judge explained "[i]f it had been tried to me, I think the result would have been different in this case." Later the court adds, "the district really did have a plausible argument that ... there was no additional damage to the property ...." As *MTA* demands, the court made its own evaluation of the evidence as demonstrated by its statement, "when I'm looking at all of the facts and circumstances and trying to assess whether the district's position in offering $10,000 to Mr. Columbo against its own

appraiser's valuation of zero, … what I would have done as a trial judge if I had been the trier of fact, Mr. Columbo is very fortunate that it was a jury that decided this case and not me …."

*Substantial Evidence Supports the Determination the Offer Was Reasonable*

"On appeal, we 'need only review the record to determine whether the trial court's findings are supported by substantial evidence.' [Citation.] ' "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's…." ' (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 [65 Cal.Rptr.2d 860, 940 P.2d 311].) The trial court's decision on the issue of litigation expenses "will not be disturbed on appeal if supported by substantial evidence. [Citation.]" (*Gilmore, supra,* 38 Cal.3d at p. 808.)

The trial court's conclusion that no litigation costs should be awarded because, based on then available information, district's final offer was reasonable, is supported by substantial evidence. The area subject to district's easement was already subject to other easements, and preexisting covenants, conditions, and restrictions prohibited owners from occupying or building on the area. Owners were unable to produce evidence they had any rights under or over the area of the easement or to alter an existing equestrian trail in the vicinity without approval from the city and from their homeowners association.

Owners' own expert appraised the value of the total area above the easement as exceeding the pretrial offer by just a little over $1,000. There was evidence that other restrictions and easements encumbering the ground in question made it analogous to parts of residential properties over which a public entity holds an easement to build and maintain roads and that, because of restrictions on the use, it had little or no value. Owners' case rested not on an assertion that the value of the easement exceeded the pretrial offer, but rather on a request for severance damages under section 1263.420. This claim was based on district's construction of a replacement pump-house on an adjacent lot it owned. Owners' expert assessed such damages at over $52,000.

District's expert opined that the impact of the replacement pump facility was similar to that of the existing one and that this structure did not differ significantly from other outbuildings in owners' equestrian neighborhood. Obviously there was evidence on both sides of the issue; but, as noted, we do not weigh the evidence, we merely determine if substantial evidence supports the trial court's conclusion district's offer was reasonable. And, based on its expressed concern the jurors might be misled by owners' emphasis on the

structure rather than the easement, it is clear that the trial court was not persuaded the new structure was sufficiently different from the existing one or entitled owners to severance damages.

During the posttrial hearing on owners' motion to recover litigation costs, the court expressed the view that it was "plausible" the new facility caused "no additional damage to the property because the impact of that neighbor, that lot being carved out on the corner of Mr. Colombo's property, in effect, had its impact in the purchase price of the lot to begin with." The court stated: "when I'm looking at all of the facts and circumstances and trying to assess whether the district's position in offering $10,000 to Mr. Columbo against its own appraiser's valuation of zero, whether that's reasonable or not —and I look at the—sort of the disappointing performance by both experts, in my opinion, at the time of trial and the circumstances and what I would have done as a trial judge if I had been the trier of fact, Mr. Columbo is very fortunate that it was a jury that decided this case and not me ...." Earlier, the court expressed the opinion that "we were looking at the real possibility that the award by the jury could be zero, or close to it, in terms of what additional impact on the fair market value of the property the improvement project of the pump station there affected [*sic*]."

*The Colombos' Accusations of Judicial Bias Are Unsupported*

We first note owners never raised the purported issue of judicial bias in the trial court. Bias and prejudice are grounds for disqualification of trial judges. (§ 170.1, subd. (a)(6).) And if judges fail to recuse themselves, there is a statutory procedure to litigate the issue. (§ 170.3.) Owners did not take advantage of these procedures and, based on the record presented here, would have failed if they had. Moreover, owners did not preserve their claim of judicial bias for review because they did not object to the alleged improprieties and never asked the judge to correct remarks made or recuse himself. (*People v. Seaton* (2001) 26 Cal.4th 598, 698 [110 Cal.Rptr.2d 441, 28 P.3d 175]; *People v. Hines* (1997) 15 Cal.4th 997, 1040–1041 [64 Cal.Rptr.2d 594, 938 P.2d 388].) But, most importantly, the judge's statements on which owners base their claim of bias are innocent and appropriate when viewed in context.

Owners first complain that at the outset of the trial, the judge gave the potential jurors a historical overview of the adoption of the United States Constitution. The court emphasized the importance of constitutional rights and the sacrifices made by many to protect them. It then noted that the sacrifices asked of jurors, in giving of their time, were also necessary to preserve our constitutional rights and our system of justice. Owners now interpret this admirable exposition as an attack upon their status as immigrants from Italy. It would be sad indeed if statements in support of our

Constitution, statements in support of our system of justice, and statements in support of jury trials were prohibited as attacks upon those of us who were not born in this country. This accusation against a conscientious, capable judge, even if it were standing alone, throws doubt upon owners' credibility and the judgment of their lawyer.

The court illustrated the need for impartiality by noting that the jurors' "mindset" should start with both parties on "a level playing field." To illustrate the inappropriateness of jurors coming to their task with predetermined stereotypes, the court cautioned them not to base their decision on preconceived ideas such as a bias against district because it was a public entity or against owners because they have Italian surnames. The point made to the jurors was important, and the illustrations were appropriate to the case. But owners twist the judge's conscientious attempt to sensitize the jurors to their duty to avoid bias as itself demonstrating bias. Were we to accept owners' tortured logic, we should censure every judge who cautions jurors not to be biased against a litigant who is the member of a particular ethnic group. Owners go on with a number of similar attacks on innocent and appropriate statements made by the judge. We will not respond specifically to each of these additional unfounded claims; the foregoing examples are sufficient to demonstrate owners' accusations lack merit.

Owners also want us to conclude the judge was biased because he ruled against them on some of their evidentiary objections. But, without even noting the questions to which they objected, they merely refer us to pages in the transcript which supposedly demonstrate some of their objections were overruled. Their brief fails to tell us what the objections were or why these unidentified objections should have been sustained. As we noted earlier, absent reasoned argument the issues are waived. (*Badie v. Bank of America*, *supra*, 67 Cal.App.4th at pp. 784–785; *Bernard v. Hartford Fire Ins. Co.*, *supra*, 226 Cal.App.3d at p. 1205.)

The final claims of bias relate to the judge's statements, noted earlier, made in connection with the motion for litigation expenses. ■ When making a ruling, a judge interprets the evidence, weighs credibility, and makes findings. In doing so, the judge necessarily makes and expresses determinations in favor of and against parties. How could it be otherwise? We will not hold that every statement a judge makes to explain his or her reasons for ruling against a party constitutes evidence of judicial bias.

"[W]hen the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him in the trial of the action. It

is his duty to consider and pass upon the evidence produced before him, and when the evidence is in conflict, to resolve that conflict in favor of the party whose evidence outweighs that of the opposing party. The opinion thus formed, being the result of a judicial hearing, does not amount to [improper] bias and prejudice ...." (*Kreling v. Superior Court* (1944) 25 Cal.2d 305, 312 [153 P.2d 734].)

*The Contention the Court Refused to Award Statutory*
*Costs Is Unsubstantiated*

Without any reference to the record, owners state that the court refused to exercise its discretion to award statutory costs under section 1268.710. And, again without such a reference, they claim the court "opined that it did not have the authority to award statutory costs ...." What is actually in the record is the court's statement it would allow normal litigation costs if owners filed a cost bill; but the record does not contain a cost bill. "It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations." (*Bernard v. Hartford Fire Ins. Co., supra,* 226 Cal.App.3d at p. 1205; accord, Cal. Rules of Court, rule 14(a)(1)(C).) If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument will be deemed to have been waived. (*Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 391 [62 Cal.Rptr.2d 803].) We decline owners' implied invitation to search the record to determine whether their claims relating to statutory costs are justified.

## DISPOSITION

The postjudgment order denying appellants Ralph and Ida Colombo their litigation expenses is affirmed. Respondent Moulton Niguel Water District shall recover its costs on appeal.

Moore, J., and Ikola, J., concurred.

A petition for a rehearing was denied October 2, 2003, and appellants' petition for review by the Supreme Court was denied November 25, 2003. Brown, J., did not participate therein.