Filed 3/2/21  A.H. v. H.N. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| A.H.,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>H.N.,<br><br>        Defendant and Appellant. | A158177<br><br>(Del Norte County<br>Super. Ct. No. CVPT071474) |

This appeal arises from a custody dispute between A.H. (Mother) and H.N. (Father) over their son, O.N.[1]  The family court awarded sole custody to Mother and visitation rights to Father.  Father subsequently moved for an order modifying those orders and requested sole custody.  After the court held an evidentiary hearing, it ordered that O.N. remain in Mother's sole custody, thereby denying Father's modification request.  Father, appearing in propria persona, appeals from that order, challenging it on multiple procedural and substantive grounds.  We reject Father's contentions and affirm.

---

[1] We use initials for the names of the parties and their child to protect the personal privacy interest of O.N.

## BACKGROUND[2]

Mother and Father are the unmarried parents of O.N., who was born on May 14, 2008. Father is married to B.N. Father, B.N., their children, and O.N. are members of the Yurok Tribe, "a federally recognized Indian Tribe." (Yurok Tribal Code, tit. 1, ch. 1.05.) Mother of O.N. is not a member.

After this action was initiated in the family court, in late 2012, Father informed Mother he was willing to "give up both physical and legal custodies [*sic*] of [O.N.] over to [Mother]" because O.N.'s "back and forth" visits with his parents had caused the child hardship. He also stated, "I do not wish to have any further visits with him at this time . . . ." Accordingly, on February 20, 2013, the court issued its findings and order after hearing and awarded both sole legal and physical custody to Mother and "[r]easonable" visitation rights to Father.

Five years later, in April 2018, B.N. filed a request in the Yurok Tribal Court for a temporary emergency order granting her sole custody of O.N.[3] The Yurok Tribal Court granted Father and B.N. joint physical and legal custody of O.N.

Approximately one month later, Mother filed a request in the family court for a temporary emergency order for the "immediate return of [O.N.] to [her] . . . in accordance with [the court's] finding and order after hearing filed

---

[2] The record does not include a copy of the original petition or response in this action. It consists of pleadings and declarations that were filed beginning in May 2018 and thereafter, as well as a reporter's transcript of the hearings related to Father's modification request. We take our summary of the facts from these documents, where the evidence appears to be undisputed.

[3] Section 13.25.150(a) of title 13 of the Yurok Tribe Family Code allows the tribal court to "grant visitation rights or the care, custody, and control of a child to a stepparent . . . ."

2

February 20, 2013." In her supporting declarations, Mother stated that neither Father nor B.N. had seen or spoken to O.N. in over five years and that B.N. had failed to inform the Yurok Tribal Court of the standing February 20, 2013 custody order in the family court.

On June 8, 2018, the family court stated in a minute order it had discussed with the Yurok Tribal Court the issue of the jurisdiction of the matter and that both courts "agree that this matter will remain in th[e] [family] court." The parties did not raise an objection to the court's communication with the Yurok Tribal Court.

On June 13, 2018, Father filed a responsive declaration to Mother's request for order, stating he refused to return O.N. to Mother's custody. Father argued among other things that it was not in O.N.'s best interests to remain with Mother and that Mother had coached O.N. to state false allegations of abuse against Father. He also highlighted that he and O.N. are members of the Yurok Tribe while Mother is not. Father contended, "I am [O.N.'s] father and only I can teach him the things he needs to know to be a man, according to our culture . . . ."

On June 15, 2018, the court granted Father temporary physical custody and Mother weekend visitation rights, pending a scheduled contested hearing set for September 26, 2018.

The court held the September 26, 2018 hearing, where Mother, Father, and O.N. each appeared (Mother and O.N. through counsel). Along with other witnesses, Mother and B.N. testified. After hearing testimony, the court issued a minute order, finding no evidence that Mother had coached O.N. to make false allegations against Father. The court also found no evidence that O.N. "should have been taken out of the Mother's home." The court thus awarded Mother both sole legal and physical custody of O.N. and

3

granted Father visitation every weekend. The court directed Mother to prepare a proposed order. Mother submitted a proposed order, to which Father objected.

On January 14, 2019, Father filed a request for a change in the custody and visitation orders, seeking both sole legal and physical custody of O.N., with visitation for Mother. Father asserted that placing O.N. with him was in O.N.'s best interests because Mother had deprived him of his connection to Yurok Tribe culture and traditions and had failed to care for his physical, emotional, and educational needs.

On February 7, 2019, Mother responded to Father's request, arguing that Father had failed to show a significant change of circumstances that would justify modifying the initial custody and visitation order of September 26, 2018.

The court conducted a hearing on Father's modification request the following day. It continued the matter to allow Father to file a reply to Mother's response to the modification request. The judge also disclosed to the parties that Mother had previously "called [his] office when [he] was in private practice." The judge recalled that the matter was "basically that the child had been taken away" and that he had told Mother he would not represent her and referred her to other attorneys. The judge then stated, "I'm not going to disqualify myself because I did not get into anything substantive."

On February 25, 2019, Father replied to Mother's response to his modification request. He additionally asked the court for an updated child custody evaluation, temporary joint legal custody with Mother, and additional time for the parties to conduct discovery.

4

The court held a hearing on March 1, 2019, to finalize its orders from the September 26, 2018 hearing, as well as to address arguments related to Father's modification request. Father's and O.N.'s counsel argued that Mother was continuing to "coach" O.N. to make false allegations against Father. The court stated it would allow the parties to present evidence showing a change of circumstances at the next scheduled hearing. However, it limited such evidence to events that occurred after the September 26, 2018 hearing.

Ultimately, on March 1, 2019, the court finalized its findings and order of the September 26, 2018 hearing. The court awarded both sole legal and physical custody to Mother and visitation rights every weekend to Father. With respect to the holiday visitation schedule, the court ordered, "Father shall have reasonable visitation over Christmas break, spring break and Thanksgiving week. The parties shall attend mediation and mediate in good faith if they are unable to reach an agreement between themselves regarding holiday visitation dates and times for Father." (All caps omitted.)

The court proceeded with a contested hearing on April 23 and May 22, 2019. The court heard testimony from the following: Mother,[4] Father, B.N., a social worker who investigated O.N.'s home, O.N.'s school teacher and administrators, his therapist, and a police officer who intervened during some of the parties' exchanges of O.N.

On May 23, 2019, the court issued a written ruling with its findings and orders. The court directed Mother to prepare a formal order for the court's approval. On June 26, 2019, the court issued its findings and order

_____

[4] After Mother was sworn in as a witness, the judge briefly mentioned the name of Mother's grandfather and that he "used to have the chicken restaurant," "was a retired police officer," and "was around here for a long time."

after hearing and awarded both sole legal and physical custody to Mother and visitation rights three weekends per month to Father. The court also made the following findings in the June 26, 2019 order: (1) "Father's open objection to any culture other than his own native culture is detrimental to [O.N.]"; (2) O.N. "has an ongoing need of counseling"; (3) O.N.'s "reports of mistreatment by the Father were not the result of coaching by Mother"; (4) O.N.'s "best interest is served by continued custody with his Mother"; (5) "[t]he hostility exhibited by Father precludes any custody order awarding him physical or legal-joint custody"; (5) "Mother should have some weekend time with [O.N.]";[5] and (6) "Mother is the parent most likely to facilitate continuing contact between [O.N.] and his Father."

Finally, in the June 26, 2019 order, the court ordered the following: (1) "Mother is to notify Father of any injuries or illness of [O.N.] which requires intervention by medical professionals"; (2) "Neither parent will speak ill of the other parent, nor allow others to do so when in [O.N.'s] presence"; (3) O.N. "will remain in his Mother's care for the weekend beginning the 3rd Friday of each month"; and (4) "All other provisions of the Custody & Visitation Order filed March 1, 2019, which are not in conflict with those set forth in this Custody & Visitation Order are to remain in full force and effect."

Father filed a notice of appeal from the June 26, 2019 order. Mother has not filed a respondent's brief.

## DISCUSSION

Father challenges the family court's order of June 26, 2019, asserting multiple claims of error on substantive and procedural grounds. We first

---

[5] At the May 22, 2019 hearing, Mother requested that the court allow her to visit O.N. on some weekends.

note that Father "is not exempt from the [appellate] rules because he is representing himself on appeal in propria persona. . . . '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.) As now explained, we conclude that his contentions on appeal have been forfeited or otherwise lack merit.

## A.      *Claims of Judicial Bias*

Father first argues that the judge assigned to preside over the contested proceedings of April 23 and May 22, 2019, was biased and should have been recused. (Code Civ. Proc., §§ 170, 170.1, subd. (a).)[6] He points to the following conduct: The judge, while in private practice prior to his assignment to this case, received a phone call from Mother, who shared that her " 'child had been taken away' "; the judge was familiar with Mother's grandfather; and the judge made "racist statements" against Father. Father adds that the subsequent findings and orders made by the judge reveal his "personal racial bias" against him.

Father forfeited any contention that the court was biased by failing to file a disqualification motion (§ 170.3, subd. (c)) or otherwise express his concerns of bias during the proceedings. Our Supreme Court has repeatedly affirmed that a failure to raise the issue of judicial bias during the trial proceedings results in the forfeiture of such a claim on appeal. (E.g., *People v. Farley* (2009) 46 Cal.4th 1053, 1110; *People v. Samuels* (2005) 36 Cal.4th 96, 114; *People v. Seaton* (2001) 26 Cal.4th 598, 698.)

_____

[6] Further undesignated statutory references are to the Code of Civil Procedure.

7

Father additionally forfeited his judicial bias claims by failing to file a prompt writ petition. A statutory claim of judicial bias must be raised by writ; it cannot be raised on appeal. (§ 170.3, subd. (d); *People v. Brown* (1993) 6 Cal.4th 322, 335–336; *Roth v. Parker* (1997) 57 Cal.App.4th 542, 547–549.) Failure to pursue a statutory bias claim will also bar a nonstatutory, constitutional bias claim. (*People v. Brown, supra*, 6 Cal.4th at pp. 335–336; *Roth v. Parker, supra*, 57 Cal.App.4th at pp. 547–549.)

We further note that Father's willingness to let the proceedings pass without raising the issue of bias against the judge not only forfeits his claims on appeal but also strongly suggests they are without merit. (See *People v. Tappan* (1968) 266 Cal.App.2d 812, 817.) The record confirms that Father's claims of judicial bias are indeed without merit.

Section 170.1 states the grounds for disqualification of a judge. It provides in pertinent part: "(a) A judge shall be disqualified if any one or more of the following are true: [¶] (1)(A) The judge has personal knowledge of disputed evidentiary facts concerning the proceeding. [¶] (B) A judge shall be deemed to have personal knowledge within the meaning of this paragraph if the judge, or the spouse of the judge, or a person within the third degree of relationship to either of them, or the spouse of such a person is to the judge's knowledge likely to be a material witness in the proceeding. [¶] . . . [¶] (6)(A) For any reason: [¶] . . . [¶] (iii) A person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial. . . ." The test under section 170.1, subdivision (a)(6)(A)(iii) " 'is fundamentally an objective one. . . .' " (*Leland Stanford Junior University v. Superior Court* (1985) 173 Cal.App.3d 403, 407–408, citing § 170.1, former subd. (a)(6)(C).)

The record does not demonstrate that the judge was disqualified under section 170.1, subdivision (a)(1). There is no evidence in the record that the judge had any "personal knowledge of disputed evidentiary facts" concerning the proceedings, as defined under section 170.1, subdivision (a)(2).

Nor does the record establish an adequate factual basis for disqualification under section 170.1, subdivision (a)(6)(A)(iii). Father first takes issue with a phone call that was exchanged between Mother and the judge when he was an attorney in private practice, prior to his assignment to this case. However, as explained by the judge, he "did not get into anything substantive," referred Mother to other attorneys, and did not form "any opinion or . . . decision about the matter." This evidence indicates that the judge had at most a cursory understanding of Mother's case and undertook no attorney–client relationship with her. Further, the judge indicated that because he lacked substantive knowledge of the case, he would not disqualify himself. On these facts, we do not find that "[a] person aware of these facts might reasonably entertain a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii).)

We also reject Father's claim of bias based on the judge's familiarity with Mother's family. Although the judge shared that he knew Mother's grandfather based on his service to the community as a retired police officer and restaurant owner, there is no indication that their connection was "intimate" or "personal." These facts alone are not sufficient to reasonably raise "a doubt that the judge would be able to be impartial." (§ 170.1, subd. (a)(6)(A)(iii); cf. *People v. Carter* (2005) 36 Cal.4th 1215, 1240–1241 [rejecting claims of bias against judge who previously worked with prosecutor and officiated the prosecutor's daughter's wedding several months before death penalty trial, along with other intermittent social and professional contacts].)

9

Father's allegations that the judge displayed "personal racial bias" likewise lack merit. Father takes issue with the court's findings that Father "open[ly] object[ed] to any culture other than his own native culture," exhibited "hostility," and was less likely than Mother "to facilitate continuing contact" with the other parent. Other than stating in conclusory fashion that the judge displayed racial bias against him through these findings, Father fails to provide reasoned argument and citations to authority. (See Cal. Rules of Court, rule 8.204(a)(1)(B) [each point in a brief must be supported by "argument and, if possible, by citation of authority"].) " 'We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' " (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*); see *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808 [" 'appellate courts are *not* required to perform an unassisted study of the record or a review of the law relevant to a party's contentions on appeal' "].)

Even if we were to consider Father's arguments, we would find them unpersuasive. "Mere expressions of opinion by a trial judge based on actual observation of the witnesses and evidence in the courtroom do not demonstrate a bias. [Citations.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111, overruled on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151.) As explained in *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1219–1220, " '[W]hen the state of mind of the trial judge appears to be adverse to one of the parties but is based upon actual observance of the witnesses and the evidence given during the trial of an action, it does not amount to that prejudice against a litigant which disqualifies him [or her] in the trial of the action. It is his [or her] duty to

10

consider and pass upon the evidence produced before him [or her], and when the evidence is in conflict, to resolve that conflict in favor of the party whose evidence outweighs that of the opposing party. The opinion thus formed, being the result of a judicial hearing, does not amount to [improper] bias and prejudice . . . ." (Second, third, and fourth bracketed insertions added.) "Moreover, a trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review. [Citations.]" (*People v. Guerra, supra*, 37 Cal.4th at p. 1112.)

As another example to support his claim of judicial racial bias, Father contends the court inaccurately stated he had failed to make child support payments. Father's citations to the record do not refer to any comments by the court but rather to a line of questioning from Mother's counsel and arguments from his counsel. California Rules of Court, rule 8.204(a)(1)(C) requires Father to support his arguments in his brief with citations to the record, " 'which includes providing exact page citations.' [Citations.] If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived." (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 853.) Father's failure to provide accurate record citations thus waives his contention. (*Ibid.*) In any event, Father fails to establish how the court's allegedly mistaken view of his child support obligations amounted to bias against him.

For the foregoing reasons, Father's claims of judicial bias fail.

**B.** ***Evidentiary Challenges***

Father next argues that the court prejudicially erred in excluding and admitting certain evidence at the April 23 and May 22, 2019 hearings.

11

Father specifically challenges the exclusion of evidence related to incidents occurring before the September 26, 2018 hearing. He also contends the court erroneously admitted evidence of his prior felony conviction and housing situation. Because Father never objected to either ruling, he has forfeited his challenges to them. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 726; see Evid. Code, § 353, subd. (a).)

Father further asserts that the court made improper comments on inadmissible matters. To support this assertion, however, Father cites to pages that were "intentionally left blank" in the reporter's transcript. Father has thus forfeited his contention by failing to provide proper record citations. (*Duarte, supra*, 72 Cal.App.4th at p. 856.) Father has doubly forfeited the contention by failing to otherwise identify those allegedly impermissible comments. (See *Cahill, supra*, 194 Cal.App.4th at p. 956.)

Moreover, Father fails to explain how the court abused its discretion in excluding or admitting the evidence, much less how those rulings resulted in a miscarriage of justice. (See *People v. Wall* (2017) 3 Cal.5th 1048, 1069 ["A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion, and it will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice"]; Cal. Const., art. VI, § 13.) For example, Father claims he was precluded from presenting evidence pertinent to his request for a change in the standing custody and visitation orders, but he does not specify the evidence he would have presented. Accordingly, Father has failed to provide a basis for reversing the court's evidentiary rulings.

## C.    *Remaining Contentions*

Father additionally asserts the following procedural and substantive claims of error: (1) the court improperly proceeded with the September 26,

2018 hearing over his objections;[7] (2) the court ignored his request for an updated court investigation; (3) the court violated "[t]he federally protected rights of [Father] and [O.N.], under the Constitution of the Yurok Tribe, and Yurok Family Code"; and (4) the court "Failed to Give Full Force and Effect" to the ordinance and custom of the Yurok Tribe. (Boldface omitted.) Once again, Father's contentions are "in dramatic noncompliance with appellate procedures" and therefore forfeited on appeal. (*Nwosu v. Uba, supra*, 122 Cal.App.4th at p. 1246.)

First, none of these contentions is supported with citations to the record. (*Duarte, supra*, 72 Cal.App.4th at p. 856.) On top of that, each assertion is devoid of either meaningful legal analysis or citation to appropriate authority, or both. (*Cahill, supra*, 194 Cal.App.4th at p. 956.) Father's first three arguments listed above each consists of two to three sentences that are conclusory and lack reference to legal authority. Father does provide authority for the fourth assertion—that the court failed to give full force and effect to tribal ordinance—but he fails to explain how that authority applies, let alone how the court supposedly misapplied or failed to apply the law. We decline " 'to perform an unassisted study of the record or a review of the law relevant to a party's contentions on appeal' " and thus treat Father's contentions as forfeited. (*In re Tobacco Cases II, supra*, 240 Cal.App.4th at p. 808.)

---

[7] To the extent Father's challenge concerning the September 26, 2018 hearing relates to the court's March 1, 2019 order, which he did not appeal, it is barred from appellate review. (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 304.) In any event, we reject the assertion on forfeiture grounds, as explained *post*.

13

**DISPOSITION**

The June 26, 2019 order is affirmed.  Because Mother has not appeared, it is in the interests of justice that each side bear its own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Jackson, J.

WE CONCUR:

_____

Fujisaki, Acting P. J.

_____

Petrou, J.

A158177/*A.H. v. H.N.*

15