Filed 11/16/22  Singh v. Riverlakes Brokers CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GURPREET SINGH,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>RIVERLAKES BROKERS, INC.,<br>et. al.<br><br>     Defendants and<br>Respondents. | B322624<br><br>Kern County<br>Super. Ct. No.<br>BCV-17-101599 |

APPEAL from the judgments of the Superior Court of Kern County, Thomas S. Clark, Judge. Affirmed.

Law Offices of Forrest R. Miller and Forrest R. Miller for Plaintiff and Appellant Gurpreet Singh.

Kaufman Dolowich Voluck, Barry Z. Brodsky and Jennifer E. Newcomb for Defendants and Respondents Riverlakes Brokers, Inc., and Sandy Garone.

Chuck & Tsoong, Stephen C. Chuck and Victoria J. Tsoong for Defendants and Respondents Jack Wright and Andrea Wright.

## INTRODUCTION

Gurpreet Singh sued Riverlakes Brokers, Inc., Sandy Garone, Jack Wright, Andrea Wright, Ramiro Minero, and Emerita Minero,[1] seeking relief for injuries allegedly stemming from his unsuccessful effort to purchase an almond orchard from the Mineros.[2] Respondents successfully moved for summary judgment on all of his claims. Separate judgments were entered for the Riverlakes Defendants, the Wrights, and the Mineros.

On appeal, Singh contends the judgments must be reversed because the trial court: (1) was personally biased against him; and (2) abused its discretion by refusing to continue the hearing on respondents' motions for summary judgment after he belatedly obtained new counsel. As discussed below, we conclude both arguments are meritless. Accordingly, we affirm.

## BACKGROUND[3]

Singh filed his operative complaint in May 2018. In July 2019, the Riverlakes Defendants, the Mineros, and the Wrights each filed a motion for summary judgment of the respective claims asserted against them. All three motions were to be heard

---

1    Throughout this opinion, we refer collectively to Riverlakes Brokers, Inc., and Sandy Garone as "the Riverlakes Defendants." Further, we refer collectively to Ramiro Minero and Emerita Minero as "the Mineros," and refer collectively to Jack Wright and Andrea Wright as "the Wrights." Lastly, we refer collectively to all these defendants as "respondents."

2    The lawsuit was also brought on behalf of J.P. World, Inc., and against Carl Kanowsky. Neither is a party to this appeal.

3    We limit our discussion of the background to the facts relevant to the issues presented on appeal.

in early October 2019. At the time, Singh was represented by Michael D. Peterson, who was served with copies of the motions.

On September 3, 2019, Peterson filed a motion to be relieved as Singh's counsel under California Rules of Professional Conduct rule 1.16(a)(3).[4] The motion was set for hearing on September 27, 2019.

In his declaration in support of the motion, Peterson stated: "Despite my desire to zealously represent my client's interests, he has consistently insisted upon presenting this prosecution according to his own understanding of the law and its timing. I have provided legal advice that I believe would be beneficial to my client, but he prefers not to follow that advice making this case extremely difficult for me. This, in conjunction with a family health crisis related to my mother's severe health decline[,] is contributing to my worsening health condition, and I must put my health and wellbeing before my job." Peterson also stated: "My client has secured an attorney, Murray Travish, Esq., to substitute into this [matter] . . . . This attorney will substitute into this case once an extension is ordered by this court, so that he may have time to come up to speed on the case details. [¶] MY CLIENT HAS A[L]READY PICKED UP HIS FILES FROM MY OFFICE." Further, Peterson stated he provided Singh with a copy of the motion by mail, and that Singh "has consented to [his] withdrawal in order to bring in a new attorney."

---

4    Peterson's motion references "Rule 1.16(c)(3)" but subsequently quotes from California Rules of Professional Conduct rule 1.16(a)(3). Rule 1.16(a)(3) requires a lawyer to withdraw from the representation of a client if "the lawyer's mental or physical condition renders it unreasonably difficult to carry out the representation effectively[.]" (Rules of Prof. Conduct, rule 1.16(a)(3).)

On September 16, 2019, Peterson filed an ex parte application for an order shortening the time to hear his motion to be relieved as counsel. In his supporting declaration, Peterson stated, in relevant part: (1) his health was declining due to extreme stress and anxiety relating to the underlying lawsuit; (2) Singh has procured an attorney who advised Peterson he would substitute into the action once a continuance or stay has been granted; (3) Singh has refused to follow Peterson's advice or recommendations; (4) Singh demanded all of his files—both in electronic and hard copy formats—be transferred to him; (5) Peterson complied with Singh's request on September 3, 2019; and (6) Peterson has been informed by Singh's prospective counsel that he is now in possession of Singh's files.

The trial court held a hearing on the ex parte application the next day. There, Peterson informed the court that he verbally notified Singh of his intention to withdraw in July 2019, and that he notified Singh of his ex parte application by leaving him a voicemail and sending an e-mail the day before. He then stated he had not spoken to Singh since July, when Singh had stopped paying him, other than to discuss Singh's desire to have his files returned to him. Concerned that Singh had not been afforded an adequate opportunity to oppose Peterson's motion, the trial court denied Peterson's ex parte application to shorten time and kept his motion to be relieved as counsel on calendar for September 27, 2019. It then vacated the hearings on respondents' motions for summary judgment with the intention of resetting them on new dates at the September 27 hearing.

At the September 27 hearing, Peterson reiterated he had not had any meaningful communication with Singh since July, which is when Singh had stopped paying him. He also stated he

4

notified Singh of his intention to withdraw and of the September 27 hearing, but received no response.

The trial court granted Peterson's motion to be relieved as counsel, effective upon service of its signed order on Singh. It set respondents' motions for summary judgment for hearing on March 27, 2020, and ordered that the deadlines for filing opposition and replies would run from that date. Further, the trial court, "in an excess of caution[,]" directed respondents to send Singh notice of the new hearing date at the address provided in Peterson's notice of his motion to be relieved as counsel.

That same day, the Riverlakes Defendants served Singh by mail with written notice of the new hearing date on their motion for summary judgment. Three days later, the Wrights also served Singh by mail with written notice of the new hearing date for their motion for summary judgment. Both notices stated the deadlines to file opposition and reply were based on the new date. The record does not indicate whether the Mineros complied with the court's directive regarding their motion for summary judgment.

On October 2, 2019, the trial court filed a written order granting Peterson's motion to be relieved as Singh's counsel. In so doing, it found Peterson personally served Singh with the papers in support of the motion, and noted respondents' motions for summary judgment were set for hearing on March 27, 2020. Although the record reflects Singh was served on September 28, 2019 with a copy of the proposed order granting Peterson's motion to be relieved as counsel, it does not indicate whether he was served with the signed order granting the motion, which was filed on October 2, 2019.

On March 18, 2020, the trial court continued the hearings on respondents' motions for summary judgment from March 27 to April 28, 2020. The Certificate of Mailing attached to the court's order does not indicate that a copy of the order was sent to Singh. Nor does the record reflect respondents served Singh with written notice of this order.

On March 20, 2020, the Riverlakes Defendants filed a notice of non-opposition to their motion for summary judgment. The notice's title page points out the hearing on their motion had been continued from March 27 to April 28, 2020. In the notice itself, the Riverlakes Defendants stated the deadline for Singh to oppose their motion was March 13, 2020, but no opposition had been filed or served upon counsel for the Riverlakes Defendants. They served Singh with a copy of their notice by overnight delivery.

On April 7, 2020, the trial court continued the hearings on respondents' motions for summary judgment from April 28 to July 6, 2020. Two days later, the Riverlakes Defendants filed a notice of the court's continuance of the hearing. They served Singh with copies of the notice and the trial court's order by mail.

On June 26, 2020, the trial court continued the hearings on respondents' motions for summary judgment from July 6 to July 7, 2020. Three days later, the Riverlakes Defendants filed a notice of the court's continuance and served Singh with a copy the notice by overnight delivery.

Travish never substituted in as counsel for Singh while the underlying case was pending. However, on July 6, 2020, William Edwards substituted in as Singh's counsel.

At the hearing held the next day, Edwards appeared on Singh's behalf and informed the court that he had been retained

the day before. The trial court stated it was inclined to grant the three unopposed motions for summary judgment and asked Edwards to address its tentative ruling. In response, Edwards argued Singh himself was never served with copies of respondents' motions, and therefore did not have a fair opportunity to respond to them. The court disagreed, finding the case file reflected that in July 2019, the motions were served on Singh's counsel of record at the time.

Edwards also attempted to challenge respondents' motions on the merits. The trial court declined to entertain his contentions, stating: "Mr. Edwards, I'm going to cut you off. Once notice has been received for [a] motion for summary judgment, there's a form and procedure, a timeline that is required to oppose the motion. None of that has been complied with. And . . . the moving parties are required to be given an adequate notice of the response evidentiary form [sic] as well as adequate notice of the legal arguments, none of which has been complied with here." Subsequently, it granted all three motions for summary judgment and entered separate judgments for the Wrights, the Riverlakes Defendants, and the Mineros.

## DISCUSSION

Singh's sole argument on appeal is the judgments must be reversed because the trial court: (1) was biased against him; and (2) abused its discretion by failing to continue the hearing on the summary judgment motions. We address each contention in turn.

## I.    Judicial Bias

Singh contends the trial court's comments at the hearing on Peterson's ex parte application to shorten time and respondents' motions for summary judgment reflect it was personally biased

7

against him. He therefore argues the judgments must be reversed because the trial court's decision to grant respondents' unopposed motions for summary judgment was "not steeped in jurisprudence, but rather expediency fueled by [its] loss of impartiality and loss of patience."

As an initial matter, we note Singh forfeited his judicial bias claim because he did not file a motion for disqualification in the trial court. (See Code Civ. Proc., § 170.3, subd. (c)(1) [a party who believes a judge is required to disqualify himself or herself must file a disqualification motion in the trial court "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification"]; see also *People v. Farley* (2009) 46 Cal.4th 1053, 1110 [defendant forfeited judicial bias claim by failing to assert it below]; *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 [appellants "did not preserve their claim of judicial bias for review because they did not object to the alleged improprieties and never asked the judge to correct remarks made or recuse himself"].) In any event, even if Singh's contention had been properly preserved and presented, it fails on the merits. As discussed below, the record does not reflect the trial court was biased, or that it otherwise engaged in any misconduct warranting reversal.

Arguments for reversal based on judicial bias generally are grounded in the due process clause,[5] "which sets an exceptionally

---

5    In support of his judicial bias argument, Singh cites California Rules of Court, Standards of Judicial Administration, rule 10.20(b). Under that rule, judicial officers "should refrain from engaging in conduct . . . that exhibits bias[ ]" (Cal. Rules of Court, rule 10.20(b)(1)), "should ensure that courtroom interactions are conducted in a manner that is fair and impartial to all persons[ ]" (*id.*, rule 10.20(b)(2)), and "should ensure that

stringent standard." (*Schmidt. v Superior Court* (2020) 44 Cal.App.5th 570, 589.) "It is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation. [Citation.] The appellate court's role is not to examine whether the trial judge's behavior left something to be desired, or whether some comments would have been better left unsaid, but to determine whether the judge's behavior was so prejudicial it denied the party a fair, as opposed to a perfect, trial. [Citation.] Mere expressions of opinion, based on observation of the witnesses and evidence, do not demonstrate judicial bias. [Citation.] Numerous and continuous rulings against a party are not grounds for a finding of bias. [Citation.]" (*Ibid.*)

Singh asserts two remarks by the trial court at the hearing on Peterson's ex parte application to shorten time demonstrate it was biased against him. The first remark was in response to an argument by the Riverlakes Defendants' counsel in opposition to the application. Counsel stated: "I understand the position [Peterson] is in. This counsel has been of record through all discovery, all documentation. He's up to speed. He knows what the arguments are. The issue here is we have [p]laintiffs who are very unscrupulous and who are taking advantage of the system.

---

all orders, rulings, and decisions are based on the sound exercise of judicial discretion and the balancing of competing rights and interests are not influenced by stereotypes or biases[ ]" (*id.*, rule 10.20(b)(3)). Violation of this rule is grounds for filing a complaint with the court or the Commission on Judicial Performance. (See *id.*, rule 10.20(d).) However, Singh does not cite—and we could not locate—any authority for the proposition a judgment may be reversed based on a violation of this rule. In any event, as discussed below, we conclude no violation occurred in this case.

We've been here on many discovery motions . . . ." At that point, the trial court interjected, stating, "I'm painfully aware of this."

The second comment occurred moments later, and again was in response to an argument by the Riverlakes Defendants' counsel. Counsel expressed concern that, if Peterson was permitted to withdraw, Singh could needlessly prolong the case further, which had already been pending for two years. The trial court responded: "I'm as familiar, I think, as you guys are with this case. I mean, I recognized the name of the case out of 700 cases [and] that's not a good sign."

Neither of those comments demonstrate or even suggest the court harbored personal bias against Singh. Indeed, the trial court ultimately ruled in Singh's favor at the hearing by denying Peterson's application, as it wanted to give Singh an adequate opportunity to oppose Peterson's motion to be relieved as counsel.

Similarly, the record does not—as Singh contends—show the trial court's decision to grant respondents' motions for summary judgment was based on bias and/or mere impatience. As discussed above, at the hearing on the motions, the trial court asked Singh's newly-substituted counsel to address the court's tentative ruling. It then rejected counsel's contention that Singh lacked sufficient notice of the motions, finding the case file demonstrated the motions were served on Singh's counsel of record at the time in July 2019. Then, the court declined to entertain counsel's oral arguments opposing the motions on their merits, given his and Singh's non-compliance with the procedural requirements governing the summary judgment process. Therefore, the record demonstrates that rather than being based on bias or impatience, the trial court's rulings were predicated on the case file, and on Singh's failure to comply with the stringent

requirements of Code of Civil Procedure, section 437c, subdivision (b)(2) and (3), which govern the process for opposing a motion for summary judgment.

In sum, for the reasons discussed above, we conclude Singh has not shown the trial court exhibited bias. Consequently, Singh has not come close to satisfying the "exceptionally stringent standard[ ]" governing reversal based on judicial bias. (*Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 589; see also *People v. Freeman* (2010) 47 Cal.4th 993, 996 ["[O]nly the most 'extreme facts' . . . justify disqualification based on the due process clause."].)

## II.    Declining to Grant Continuance

Generally, there is no right to a continuance as a matter of law, and the power to determine whether a continuance should be granted is within the discretion of the trial court. (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 714.) "[I]n the absence of an affidavit that requires a continuance under [Code of Civil Procedure] section 437c, subdivision (h), we review the trial court's denial of [a] request for a continuance for abuse of discretion." (*Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254.)

Although not entirely clear, Singh appears to contend the trial court abused its discretion by declining to continue the hearing on respondents' motions for summary judgment because: (1) he was not timely or appropriately notified of Peterson's motion to be relieved as his counsel; (2) due to the COVID-19 pandemic, he had difficulty retaining a new lawyer to represent him following Peterson's departure, and was unable to do so until the day before the hearing; and (3) the record fails to demonstrate he was timely notified that respondents' motions for

summary judgment had been reset for hearing on March 27, 2020, and continued several times thereafter. As discussed below, we conclude his contentions are meritless, as they are unsupported by the record.

On Singh's first point, Peterson told the trial court that he verbally informed Singh of his intention to withdraw in July 2019. Further, as discussed above, Peterson's declarations in support of his motion to be relieved as counsel and his ex parte application to shorten time reflect Singh consented to Peterson's withdrawal, that Singh asked Peterson to return all of his files to him, that Peterson complied with his request on September 3, 2019, and that Peterson served Singh with a copy of his motion by mail. This uncontradicted evidence demonstrates Singh was aware of Peterson's intention to withdraw before Peterson filed his motion to do so, and Singh was aware of the motion itself.

With respect to his second point, Singh points to no evidence in the record concerning his efforts to retain counsel following Peterson's departure. Nor does he identify any evidence establishing he experienced difficulty in finding a lawyer to represent him due to the COVID-19 pandemic. We were unable to locate any such evidence in the record.

Lastly, with respect to his third point, the record reflects that in September 2019, the Riverlakes Defendants and the Wrights notified Singh in writing that the hearings on their motions for summary judgment had been continued from October 2019 to March 27, 2020, and that the deadlines for filing oppositions and replies would trail from that date. We note that, as Singh points out, the record does not show he was served a copy of the trial court's March 18, 2020 order continuing the hearing from March 27 to April 28, 2020. It does show, however,

12

that on March 20, 2020, Singh was served with the notice of non-opposition filed by the Riverlakes Defendants, which stated the hearing originally set for March 27 had been continued to April 28, 2020. Subsequently, on April 9, 2020, Singh was notified in writing that the hearing on all three motions for summary judgment had been continued from April 28 to July 6, 2020. Finally, on June 29, 2020, Singh was notified in writing that the hearing on respondents' motions had been continued from July 6 to July 7, 2020. This uncontradicted evidence establishes Singh was timely notified of the initial continuance of the hearings on respondents' motions for summary judgment, as well as the subsequent continuances.

In sum, for the reasons discussed above, we conclude Singh's contentions underlying his assertion of reversible error are not supported by the record. Accordingly, he has not shown the trial court abused its discretion by declining to continue the hearing on respondents' motions for summary judgment.

## DISPOSITION

The judgments are affirmed. Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORT**

CURREY, J.

We concur:

MANELLA, P.J.

STONE, J.*

---

∗    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14